```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


TONY DPHAX KING,                  :    CIVIL ACTION
                                  :    No. 14-1015
          Plaintiff,              :
                                  :
     v.                           :
                                  :
PHILADELPHIA PARKING              :
AUTHORITY et al.,                 :
                                  :
          Defendants.             :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            April 10, 2015

       This case arises from Plaintiff Tony Dphax King's suit against Defendants Philadelphia Parking Authority ("the PPA") and the City of Philadelphia ("the City") for constitutional and state law violations allegedly suffered in connection with Plaintiff's receipt and appeal of multiple parking tickets. Defendants have moved to dismiss. For the following reasons, the Court will grant the motions to dismiss.

I.    BACKGROUND

       Plaintiff asserts that he reasonably interpreted Philadelphia parking ordinances[1] allowing him to park his scooter

---

[1] Plaintiff states that "[b]y its plain wording, the parking code at sections 12-913 and 12-915, allows citizens to park scooters on a sidewalk to protect the property." Second Am. Compl. ("SAC") ¶ 16.

on the sidewalk when necessary to avoid damage from heavy street traffic. Second Am. Compl. ("SAC") ¶ 8. Nonetheless, Defendant PPA issued Plaintiff numerous parking tickets, which Plaintiff contested at a hearing before a Bureau of Administrative Adjudication ("BAA") hearing examiner. Id. ¶¶ 10-11; PPA's Mem. Supp. Mot. Dismiss Ex. A, King v. City of Phila., No. 124 C.D. 2014, slip op. at 1-2 (Pa. Commw. Ct. Oct. 24, 2014). After the hearing examiner ruled against him, Plaintiff requested an appeal hearing. PPA's Mem. Supp. Mot. Dismiss Ex. A, King, No. 124 C.D. 2014, slip op. at 2. On September 21, 2012, the BAA-- which is operated by the City--held a hearing without Plaintiff's presence, despite notice from Plaintiff that he could not attend, and found him liable for the alleged violations. SAC ¶ 12; PPA's Mem. Supp. Mot. Dismiss Ex. A, King, No. 124 C.D. 2014, slip op. at 2. Plaintiff claims that these hearings are inherently biased, as they are presided over by City employees who give deference to PPA testimony. SAC ¶¶ 13-14. Plaintiff appealed the BAA's decision to the Court of Common Pleas of Philadelphia County, which dismissed the pro se appeal for Plaintiff's failure to file a brief in a timely manner. Id. ¶ 15. Plaintiff appealed to the Commonwealth Court of Pennsylvania, which affirmed the lower court's discretionary dismissal. Id.

During the pendency of Plaintiff's appeal, Defendants demanded payment of his ticket fines, now amounting to thousands of dollars. Id. ¶¶ 18-19. Defendants allegedly intentionally reported these debts to major credit agencies, which lowered Plaintiff's credit rating and prevented him from obtaining a loan for needed home improvements. Id. ¶ 19. In November 2013, Defendants allegedly reported Plaintiff to the Pennsylvania Department of Transportation, which suspended Plaintiff's driver's license until he could pay the ticket fines. Id. ¶¶ 22-24.

In light of the above factual allegations, Plaintiff brings three counts against Defendants: a claim under 42 U.S.C. § 1983, alleging a Fourteenth Amendment due process violation against the City (Count I); a similar § 1983 claim, alleging a Fourteenth Amendment due process violation against the PPA (Count II); and various state law claims against "currently unnamed and unknown employees" of the City and the PPA, including "attempted theft (trespass), false light privacy and defamation, . . . and malicious prosecution" (Count III). Id. ¶¶ 32-39. Plaintiff alleges that he suffered financial harm, reputational harm, and emotional distress, and requests compensatory and punitive damages. Id. ¶ 40.

## II. PROCEDURAL HISTORY

On February 18, 2014, Plaintiff filed his initial pro se Complaint. ECF Nos. 1-1, 4. After the Court dismissed Defendants' first two motions to dismiss without prejudice, Plaintiff filed a counseled Second Amended Complaint on December 22, 2014. ECF No. 21. On January 8, 2015, the PPA filed a Motion to Dismiss (ECF No. 22), to which Plaintiff responded on February 5, 2015 (ECF No. 27). On February 2, 2015, the City filed a Motion to Dismiss (ECF No. 26), to which Plaintiff responded on February 19, 2015 (ECF No. 29). On March 2, 2015, the Court heard oral argument on this matter. These motions are now ripe for disposition.

## III. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks omitted). In order to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007). This "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). The Third Circuit has interpreted Twombly as emphasizing three principles. First, a plaintiff must provide "a 'showing' rather than a blanket assertion of an entitlement to relief"--a showing being "some factual allegation in the complaint." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). Second, the "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] is rejected. Phillips, 515 F.3d at 232-33. Finally, the Twombly decision's plausibility requirement applies outside the narrow antitrust context.[3] Id. at 234. The Phillips court summarized that what Twombly requires is "not merely a short and plain statement, but instead . . . a statement 'showing that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

---

[2] In Conley, the Supreme Court had held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46 (emphasis added).

[3] As the Phillips court noted, the plausibility requirement boils down to the following: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." 515 F.3d at 234 (citations omitted) (quoting Twombly, 550 U.S. at 556).

In further fleshing out the plausibility requirement, the Third Circuit has held that the pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Twombly, 550 U.S. at 555). In deciding a Rule 12(b)(6) motion, the court is to limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV. DISCUSSION**

Plaintiff's constitutional allegations can be distilled to three individual claims: Defendants (1) intentionally denied him a fair hearing by holding it in his absence; (2) have a "pattern, practice and custom" of holding unfair and biased hearings by allowing BAA employees to act as "judge and jury" and giving unfair deference to City employees and agents; and (3) have a "pattern and practice of enforcing the parking code in a manner which [they] know[] is incorrect." Pl.'s Resp. City's Mot. Dismiss 5-6.[4]

Before moving on to the substantive claims, the Court must pause briefly to address Defendants' identities and scopes of operation. Plaintiff has not clearly demarcated the alleged actions attributable to each party separately, and notes: "Additionally based on the comity of interests between the defendants, plaintiff requires discovery to ferret out what acts were done by the City of Philadelphia and which acts were done by the PPA, or which were done collectively." Pl.'s Resp. PPA's Mot. Dismiss 9. However, as counsel for Defendant PPA noted at oral argument, the Philadelphia City Code has prescribed the functions of each Defendant.

---

[4] Because the pages in Plaintiff's briefs are not numbered, the Court refers to the page numbers imposed by ECF.

The Code provides "[t]hat the City of Philadelphia, . . . is authorized to provide for parking violation enforcement outside of the criminal justice system, and an administrative process for the adjudication of parking violations i[n] an efficient, fair and reasonable alternative thereto." Phila. Code § 12-2801(3). In addition, "the City of Philadelphia . . . has . . . delegated to the Philadelphia Parking Authority certain powers relating to the administration, supervision and enforcement of on-street parking regulations." § 12-2801(4). Moreover, this "system of administrative adjudication of parking violations should provide for the proper separation of the administrative and executive functions from the adjudicatory function in the enforcement process." § 12-2801(5).

The Director of Finance, a City position that occupies a place on the Mayor's Cabinet, see § 3-102, "shall have the power and duty . . . to provide by regulation for the hearing and determination of cases involving alleged violations of provisions of [the Traffic Code] relating to parking," § 12-2802(1), and "shall appoint such Parking Hearing Examiners and such other persons as shall be necessary to carry out the provisions of this Chapter," § 12-2802(2). The Code provides that "[e]ach adjudication of a parking violation pursuant to this Chapter shall be conducted by a Parking Hearing Examiner,"

8

§ 12-2807(1), and details the appeals process, which includes a hearing before a Parking Appeals Panel, see § 12-2808.

The City Code sections quoted above describe a system wherein the PPA's role in administering parking tickets is distinct from the City's role in providing a forum where parking violations can be contested and appealed. Applying this legal framework to Plaintiff's constitutional claims under § 1983, the Court holds that although the City may be held liable for any of the claims, the PPA may be held liable only for the ticketing enforcement claim. The analysis below proceeds on this basis.

A. Legal Standard

Under Monell v. Department of Social Services of the City of New York, the Supreme Court held that municipalities may be sued for monetary damages under § 1983 where the constitutional violation alleged results from an official policy or custom. 436 U.S. 658, 690-91 (1978). Accordingly, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691. In order to establish a Monell claim, a plaintiff must plead the following:

> (1) the municipality had a policy or custom that deprived [the plaintiff] of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) that [the plaintiff's] injury was caused by the identified policy or custom.

9

Grant v. Winik, 948 F. Supp. 2d 480, 512-13 (E.D. Pa. 2013) (Robreno, J.) (citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04 (1997)).

   B.   Analysis

Although Plaintiff was not clear--in either the Second Amended Complaint (which is his third try at stating a viable cause of action) or his briefing--regarding the precise legal theory under which he brings his constitutional claims, Plaintiff's counsel confirmed at oral argument that Plaintiff proceeds under both substantive and procedural due process. The Court therefore evaluates Plaintiff's Monell claims under each theory separately.

   1.   Substantive Due Process

"[T]he core of the concept of due process is protection against arbitrary action and . . . only the most egregious official conduct can be said to be arbitrary in the constitutional sense." United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399 (3d Cir. 2003) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998)) (internal quotation marks omitted). Accordingly, "the cognizable level of executive abuse of power [i]s that which shocks the conscience." Id. (quoting Lewis, 523 U.S. at 846) (internal quotation marks omitted). The Third Circuit's "cases have

10

repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience but that the meaning of this standard varies depending on the factual context." Id. at 399-400.

Defendants argue that Plaintiff failed to plead sufficient facts to satisfy a Monell claim based on substantive due process. City's Mem. Supp. Mot. Dismiss 5-7;[5] PPA's Mem. Supp. Mot. Dismiss 4-5. Moreover, as the City argues, even assuming that there was a substantive due process violation, Plaintiff has not pled any causal link between a deliberate City policy or custom and Plaintiff's alleged injury. City's Mem. Supp. Mot. Dismiss at 6-7.

The Court agrees with Defendants' assessment. Plaintiff's claims--that he was denied a fair hearing when it was held in his absence, that the hearing process is inherently unfair, and that the parking code is arbitrarily enforced--are not supported by sufficient factual allegations to show either that they rise to a conscience-shocking level or that Defendants established a policy or custom that violated Plaintiff's rights in these ways. First, in his claim that the hearing was held in his absence, Plaintiff pled that Defendants "scheduled a hearing

---

[5]     Because the pages in the City's brief are not numbered, the Court refers to the page numbers imposed by ECF.

for a date for which it knew that plaintiff would be out of town." SAC ¶ 12. Plaintiff offers nothing to show that this one-off action was done in compliance with any City custom or policy, as required under Monell. Perhaps the BAA hearing officer acted inappropriately, but because the City cannot be held liable under respondeat superior, and because Plaintiff does not plead otherwise, this claim fails. See Monell, 436 U.S. at 691.

Second, with respect to Plaintiff's unfair hearings claim, he does not offer any specific City policies or procedures directing BAA hearing officers to give deference to PPA or City employees. In fact, Plaintiff pleads only conclusory statements. See, e.g., SAC ¶ 13 ("Upon information and belief, the above referred to hearing was held by either an employee of the BAA . . . and/or the [PPA]--not a neutral arbiter; the employees of defendants have a vested interest in finding citizens of Philadelphia guilty of specious and ambiguous parking violations . . . ."); id. ¶ 14 ("The BAA/PPA hearings are inherently unfair . . . ."); Pl.'s Resp. City's Mot. Dismiss 8 ("There is also a reasonable inference that the PPA witnesses are involved in the scheme of unfair, biased hearings."). Plaintiff does not add any specific facts to accompany these bare conclusory statements or to show that they represent a City custom or policy. Because these are "legal conclusion[s] couched

12

as . . . factual allegation[s]," Papasan, 478 U.S. at 286, the unfair hearings claim fails. See also Phillips, 515 F.3d at 232 (holding that a plaintiff must provide "a 'showing' rather than a blanket assertion of an entitlement to relief").

Finally, regarding Plaintiff's ticketing enforcement claim, he points to City Code sections 12-913[6] and 12-915 and claims that Defendants' parking violation enforcement practices deviated from these sections at the time he received the multiple tickets. SAC ¶¶ 10, 16; Pl.'s Resp. City's Mot. Dismiss 8. In order to support this claim, Plaintiff alleges that he was "issued repeated parking tickets for parking on the sidewalk-- some of these tickets were issued even though he protested to defendant PPA's employees that he did so to protect his scooter from being destroyed by oncoming cars and trucks." SAC ¶ 10. He also offers as evidence a supposed decision by the City to "relax[] the[] respective enforcement of scooter parking and motorcycle parking on the streets of Philadelphia." Id. ¶ 9. Plaintiff's evidence for this change amounts to a brief and uncited reference to a newspaper article. See id. ¶ 25 ("[T]his new practice was publicized by at least one Philadelphia

---

[6] Section 12-913 reads, in relevant part: "Except when necessary to avoid conflict with other traffic or to protect the safety of any person or vehicle[,] . . . no person shall: (a) Stop, stand or park a vehicle: . . . (ii) On a sidewalk . . . ." Phila. Code § 12-913.

newspaper."). Even making the doubtful assumption that evidence of subsequent remedial measures could be used to show that Defendants had been arbitrarily enforcing the parking code, Plaintiff fails to sufficiently plead this claim. He has not: (1) pointed, other than in the most summary fashion, to any facts supporting his claim that he was ticketed in violation of the parking code; (2) made allegations supporting an inference that Defendants had a policy or custom of arbitrarily enforcing the parking code; or (3) shown how what appears to be, at most, a disagreement about the interpretation of the relevant parking code section rises to a conscience-shocking level. See Phillips, 515 F.3d at 232-34. For these reasons, this claim fails as well.

### 2. Procedural Due Process

Having found Plaintiff's substantive due process claims to be fatally flawed, the Court turns to his procedural due process claims. The Third Circuit has held:

> To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).

Here, numerous references to property and liberty interests are liberally strewn throughout the Second Amended Complaint, although most appear to relate to Plaintiff's state law claims. See, e.g., SAC ¶¶ 17, 20, 22, 27, 28, 29, 30, 31. At oral argument, Plaintiff's counsel referenced liberty interests, see Hearing Tr. 17:14-17, Mar. 2, 2015 (noting "the liberty to park the scooter on the sidewalk as well as the liberty to travel within the City"), and also potentially a property interest, see id. 13:16-18 (referencing a scheme by the City and the PPA to "take money from people who drive scooters"). Even though the precise liberty or property interest at issue remains undefined, the Court assumes for the sake of argument that Plaintiff has identified one.

Plaintiff's more difficult task is to show that he was not afforded due process of law when Defendants allegedly deprived him of his liberty and/or property interests; and, indeed, he has not done so. Under procedural due process, the Court analyzes together Plaintiff's three central constitutional claims--that he was denied a fair hearing when it was held in his absence, that the hearing process is inherently unfair, and that the parking code is arbitrarily enforced. Plaintiff argues that he was not afforded due process of law when the BAA held a hearing in his absence. See SAC ¶ 12; Hearing Tr. 18:2-4. However, as Plaintiff's counsel conceded at oral argument,

15

Plaintiff had two opportunities to appeal his parking tickets before the BAA. See Hearing Tr. 18:12-13 ("Now, he had a second hearing, that's admitted."). He attended the first of these hearings and argued his case to the BAA hearing examiner, who ruled against him. PPA's Mem. Supp. Mot. Dismiss Ex. A, King, No. 124 C.D. 2014, slip op. at 1-2. Plaintiff argues that the hearing he did attend was constitutionally flawed because the arbiters are employees of Defendants and thus not neutral. See SAC ¶ 13-14; Hearing Tr. 18:14-15 (contending that "there really was no hearing because this is just a scheme"); id. 19:9-10 ("[I]t is no more than a scheme, because the hearing officers are employees of the City or PPA."). He also argues that the structure of the hearings does not afford due process. See Hearing Tr. 19:25-20:1 ("[The hearing examiners] don't let you go into much detail about, you know, why it is not fair and so forth."); id. 20:20-21:7 ("THE COURT: Okay. Well, you think the whole system is rigged, it is a sham? [PLAINTIFF'S COUNSEL:] At least with respect to the scooter parking, Your Honor. He attempted, I know, at the second hearing[7] to explain the plain reading of the statute of the parking ordinance . . . [a]nd they merely gave him lip service as to his belief that the statute

---

[7] There appears to be some confusion about which BAA hearing Plaintiff was present for and which was held in his absence. Regardless, as noted above, the parties agree that two hearings were held, and that Plaintiff attended one of them.

16

allowed him to park on the sidewalk."). Despite these serious claims, Plaintiff makes no specific allegations allowing the Court to draw the inferences he requests.[8] These claims are patently conclusory. Moreover, Plaintiff had another opportunity, in the Court of Common Pleas, to challenge Defendants' enforcement of the parking code against him. His failure to prosecute his Common Pleas appeal does not render unconstitutional the process he was given.

. . . .

In conclusion, Plaintiff has not sufficiently pled "factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Plaintiff has been given two opportunities to amend his Complaint, as well as an adequate hearing at oral argument. These opportunities have not generated sufficient pleadings--nor, based on the content alleged, are they likely to. See Phillips, 515 F.3d at 234 (noting that the pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element" (quoting Twombly, 550 U.S. at 556)).

---

[8] In addition, Plaintiff's Monell claim against the City fails for the same reasons as under substantive due process above.

Accordingly, the Court finds that further attempts by Plaintiff to amend are futile and will dismiss with prejudice the constitutional claims against Defendants.[9]

## V.  CONCLUSION

For the reasons set forth above, the Court will grant the City's and the PPA's motions to dismiss. An appropriate order follows.

---

[9] While this Court has "the constitutional power" to adjudicate a pendent state law claim after a federal law claim has dropped out, it retains full discretion whether to do so or not. Lentino v. Fringe Emp. Plans, Inc., 611 F.2d 474, 478 (3d Cir. 1979). Here, the Court will dismiss Plaintiff's state law claim without prejudice.